**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**PATRICK HENRY ESTATES
HOMEOWNERS ASSOCIATION, INC.
A West Virginia corporation,**

       Plaintiff,

**v.**                                  **Civil Action No. 3:08-CV-175
(BAILEY)**

**DR. GERALD MILLER,**

       Defendant.

## MEMORANDUM OPINION AND ORDER

Currently pending before the Court are Plaintiff Patrick Henry Estates Homeowners Association, Inc.'s Partial Motion for Summary Judgment as to Defendant's Counterclaims [Doc. 83], filed September 29, 2010; and Defendant Dr. Gerald Miller's Motion for Partial Summary Judgment [Doc. 84], filed September 30, 2010. The plaintiff responded on October 22, 2010 [Doc. 86], the defendant responded on October 25, 2010 [Doc. 87], and the parties exchanged replies on November 5, 2010 [Docs. 89 & 90]. This Court, having reviewed the motions and the memoranda submitted with regard thereto, finds that the plaintiff's motion should be **GRANTED**, and the defendant's motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

**I.    Factual History**

This case involves a dispute between the homeowner's association and current developer of Patrick Henry Estates, a subdivision located in Charles Town, West Virginia.

1

Patrick Henry Estates (the "Subdivision") was created by declaration (the "Declaration") on

October 22, 1981. The declarant, Shendo Limited Partnership ("Shendo"), was the

Subdivision's original developer. Shendo provided the real estate for the Subdivision,

which would consist of "permanent residential areas" and "other common facilities." Shendo

also declared that it would "provide . . . for the maintenance of said recreational areas, and

streets, and other common facilities" in the Subdivision. In furtherance of these promises,

Shendo declared its real estate subject to "the covenants, restrictions, easements, charges,

and liens" set forth in the Declaration. Shendo also "caused to be incorporated" the

"Patrick Henry Estates Home Owner's Association" (the "Association")[1] to (1) "maintain[]

and administer[] the common properties and facilities"; (2) "administer[] and enforce[] the

covenants and restrictions"; and (3) "collect[] and disburs[e] the assessments and charges"

created in the Declaration. (Decl. at 1).

On the date of declaration, Dr. Gerald Miller ("Miller") was a 50% owner of Shendo.

([Doc. 23] at ¶ 7). On December 30, 1986, however, Miller obtained 100% ownership of

the Subdivision by deed from Shendo. (Id. at ¶ 18). As a result, Miller became the

successor developer of the Subdivision, responsible to carry out the promises of Shendo

as the original developer in the Declaration. (Id. at ¶ 20).

The crux of this case is the interpretation of the Declaration, particularly Article IV

(Assessments), Section 3, and Article VII (Property Rights and Rights of Enjoyment of

Common Property), Section 3. Article IV, Section 3 provides:

Section 3. The Developer shall be responsible for the original construction

_____

[1]The Association was not officially incorporated until June 6, 1990. ([Doc. 23] at ¶
10; [Doc. 25] at ¶ 4).

of the streets and common areas in the subdivision. Upon completion of the streets and common areas, the same shall be dedicated and conveyed to the Association. It shall be the further responsibility of the Developer to maintain the streets, and all other common properties . . . until such time as these amenities are dedicated and deeded to the Association.

Upon dedication of the common properties . . . to the Association, the initiation fees and assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents and other persons owning and using lots in Patrick Henry Estates Subdivision and in particular for the improvement and maintenance of properties, services and facilities devoted to this purpose.

Pursuant to the foregoing, the Association may use and employ initiation fees and assessments to provide for repair, improvement and maintenance of the common properties, payment of taxes and insurance thereon, repaving, improvement, repair and maintenance of streets, alleys, and common ways and for construction, reconstruction, repair, and maintenance and improvement of storm sewers. Any enumeration of specific uses herein, however, shall not be construed to limit the Association to the use of initiation fees and assessments for purposes similar to the foregoing.

(Decl. Art. IV, Sect. 3).

Article VII, Section 3 provides:

Section 3. The Developer may retain the legal title to the common properties until such time as he has completed improvements thereon but, notwithstanding any provision herein, the Developer hereby covenants, for himself, his heirs and assigns that he shall convey the common properties to the Association, free and clear of all liens and encumbrances, but subject to easements and rights of way, not later than January 1, 1987.

(Decl. Art. VII, Sect. 3).

To date, Miller has not conveyed the common properties to the Association. ([Doc. 82] at ¶ 12; [Doc. 85] at ¶ 12). The common properties of the Subdivision have become deteriorated and are in need of repair. (Id. at ¶ 8; Id. at ¶ 8). Miller denies responsibility for the repairs. (Id.).

In addition, Miller owns certain lots within the Subdivision, including Lot C-1. (Id. at

¶ 7; Id. at ¶ 7).  On June 4, 2008, Miller submitted a Community Impact Statement ("CIS") to the Jefferson County Planning Commission (the "Commission") in support of a proposal to use Lot C-1 as a residential drive into an apartment complex to be known as the Sloan Square Apartment Complex ("Sloan Square").  ([Doc. 23] at ¶¶ 31-32; [Doc. 25] ¶¶ 1, 10).  The Association submitted a petition and letter to the Commission, and its vice president appeared before the Commission to oppose Sloan Square,.  ([Doc. 83] at 5).  In particular, the Association protested the use of the Subdivision's common areas to serve Miller's venture.  (Id.).  The Commission approved the CIS for Sloan Square upon the condition that no access be made through Lot C-1.  ([Doc. 23] at ¶ 34).

Finally, the Declaration provides that all lots, which would include Lot C-1, "shall be kept free of garbage and trash and the vegetation thereon shall be neatly trimmed and maintained so as not to be a nuisance."  (Decl., Art. VI, Sect. 1, Para, 14).

## II.    Procedural History

On October 27, 2008, the Association filed suit against Miller in the Circuit Court of Jefferson County, West Virginia, claiming violations of the Declaration and the Uniform Common Interest Property Act (the "Act"), W. Va. Code § 36B-1-1, *et seq.* [Doc. 1-1].  On December 3, 2008, Miller removed the matter to this Court based upon diversity jurisdiction [Doc. 1].  A week later, Miller filed an Answer and Counterclaim [Doc. 7]; the Association answered the Counterclaim on December 30, 2010 [Doc. 10].  Since then, the Association has twice amended its Complaint, most recently filing its Second Amended Complaint [Doc. 82] on September 17, 2010.  The Association moved for partial summary judgment as to Miller's counterclaims on September 29, 2010, and Miller moved for partial summary judgment as to the Association's claims on September 30, 2010 [Docs. 83 & 84].  This

matter is scheduled for a bench trial on January 11, 2011.

## A.  Miller's Motion for Partial Summary Judgment on Second Amended Complaint

The Association's Second Amended Complaint contains five counts, which together seek injunctive, monetary, and declaratory relief.  ([Doc. 82] at 2-10).

In Count I, the Association requests an injunction directing Miller to "make all necessary repairs to bring the common elements within compliance with the applicable Covenants."  (Id. at 4, (a)).  In the alternative, the Association requests an award of damages "in such amount as necessary to allow [it] to affect the necessary repairs to the common elements within the Subdivision."  (Id. at 4, (b)).

In Count II, the Association requests an injunction prohibiting Miller from "conveying the common elements, including, but not limited to the streets and roadways in Patrick Henry Estates, to any third party pending full adjudication of this matter."  (Id. at 6, (a)).  In addition, the Association requests an order "declaring the rights of the respective parties in regard to the existing platted common areas within the developed portions of Patrick Henry Estates, including but not limited to the streets and recreation areas."  (Id. at 6, (b)).  Also in Count II, the Association requests an injunction directing Miller to "convey the common elements within Patrick Henry Estate, including, but not limited to the streets and roadways, to the [Association], free and clear of all liens and encumbrances as is required by the Covenants."  (Id. at 6, (c)).

In Count III, the Association requests an injunction prohibiting Miller from "utilizing Lot C-1 in violation of the residential restriction in Article VI, Section 2 of the Covenants."  (Id. at 8, (a)).  The Association requests the same form of relief to prohibit Miller from

"attempting to exercise development rights in violation of the Declaration and [the Act]." (Id. at 8, (b)).

In Count IV, the Association requests an injunction requiring Miller to "mow or otherwise maintain the vegetation, including grass, upon Lot C-1 pursuant to [the] Covenants, and/or to permit the . . . Association to enter upon, mow and maintain said lot and assess a lien against [Miller's] lot to recover costs thereof." (Id. at 9, (a)). In this regard, the Association requests an award of costs and reasonable attorney's fees in association with bringing Count IV. (Id. at 9, (b).

In Count V, the Association requests an award of damages in the amount not less than $525,00.00 for "the repair and maintenance of the common elements within the . . . Subdivision." (Id. at 10, (a)). The Association also requests an award of costs and reasonable attorney's fees in association with bringing this action. (Id. at 10, (b)).

On September 30, 2010, Miller moved for summary judgment on every count except Count III. First, Miller argues that none of the Association's causes of action can rely on the Act because the Subdivision was created prior to its effective date, July 1, 1986. ([Doc. 84] at 5-7). Second, Miller argues that the Association's claims for monetary relief in Counts I, IV, and V are barred by the ten-year statute of limitations for contracts. (Id. at 7–8). Third, insofar as Count II seeks enforcement of a specific provision of the Declaration requiring Miller to have transferred the common elements to the Association by January 1, 1987, Miller argues that Count II is similarly barred by the statute of limitations for contracts. (Id. at 8-11).

On October 22, 2010, the Association responded to all three of Miller's arguments. First, the Association argues that the Act applies retroactively to preexisting common

interest communities, like the Subdivision. ([Doc. 86] at 1-5).  Second, the Association asserts that monetary relief is not time-barred because, *inter alia*, Miller's failure to maintain the common elements of the Subdivision constitutes an ongoing breach of the Declaration, and thus, is equitable in nature. (Id. at 6-7).  Third, the Association argues that this ongoing breach, which runs with the land, allows it to also seek specific performance.  (Id. at 5-6).

On November 5, 2010, Miller reemphasized and supplemented his previous arguments in support of his motion for summary judgment.  First, Miller argues that the Act is inapplicable because Patrick Henry Estates is not a common interest community, and even if so, the provisions relied upon do not apply retroactively. ([Doc. 90] at 1-9).  Second, Miller argues that the Association's monetary damages claim is one at law and thus barred, but even if equitable, the Court should still preclude the claim based upon the doctrine of laches.  (Id. at 9-11).  Third, Miller asserts that the Association's claim for breach of the Declaration is based in contract and thus barred by the applicable statute of limitations.  (Id. at 11-14).

### B.    Association's Motion for Partial Summary Judgment on Counterclaim

Miller's Counterclaim contains six counts seeking monetary and declaratory relief. ([Doc. 23] at 13-22).

In Count I, Miller claims that the Association twice interfered with his advantageous business relationship in connection with creating a residential apartment complex on Lot C-1.  (Id. at ¶¶ 36-41).  First, the Association appeared before the Jefferson County Planning Commission to oppose Miller's Community Impact Statement.  (Id. at ¶ 39).  Second, the Association submitted a petition to the Commission in opposition to the apartment complex.  (Id.).  As relief, Miller requests an award for lost profits, interest,

punitive damages, costs, and attorney's fees.  (Id. at 21, (a)).

In Count II, Miller claims that the Association has committed five breaches of contract.  (Id. at ¶¶ 42-65).  First, the Association interfered with Miller's duty to perform under the Declaration by failing or refusing to fund the maintenance of the common areas of the Subdivision.  (Id. at ¶¶ 43-50).  Second, the Association breached the Declaration by failing to set up a checking account and release funds for common area maintenance.  (Id. at ¶¶ 51-57).  Third, the Association breached the Declaration by failing to send each lot owner in Patrick Henry Estates a financial statement covering common area maintenance in the Subdivision.  (Id. at ¶¶ 58-60).  Fourth, the Association breached its articles of incorporation by failing or refusing to fund maintenance of the common areas of the Subdivision.  (Id. at ¶¶ 61-65).  Fifth, and for the same reasons, the Association breached its by-laws.  (Id. at ¶¶ 66-68).  As relief, Miller seeks an award of damages, incidental and consequential, and interest.  (Id. at 21, (b)).

In Count III, Miller asks this Court to declare that "the . . . Association is responsible for collecting funds sufficient to cover cost of the road maintenance and that [he] is only required to maintain the roads if provided with sufficient funds by the . . . Association."  (Id. at ¶ 72).

In Count IV, Miller asks this Court to declare that "his use of lot C-1 as an entrance into the residential complex is permitted either under the covenants or as a valid residential purpose within the meaning of the [c]ovenants."  (Id. at ¶ 78).

In Count V, Miller claims that the Association breached its fiduciary duty to use assessments only for common area maintenance by failing to pay him the monies collected.  (Id. at ¶¶ 79-85).  As relief, Miller seeks damages, including interest, costs and

attorney's fees, and punitive damages. (Id. at 22, (e)).

In Count VI, and in the alternative to his other claims, Miller asks this Court to declare that "the Declaration . . . [was] not properly adopted and [is] therefore void." (Id. at ¶ 88).

On September 29, 2010, the Association moved for summary judgment on Counts I, II, and V. First, the Association claims immunity from Miller's claim of interference in Count I because presenting opposition to a planning commission is protected activity under the First Amendment. ([Doc. 83-1] at 6-13). Second, the Association argues that no breach of contract claim can proceed because the unambiguous language of the Declaration provides that Miller is solely responsible for common area maintenance until conveyance to the Association, which has not occurred. (Id. at 16-17). However, even if Miller's duty to maintain depended upon the Association's duty to fund, the Association argues that Miller's claim for damages cannot be more than the amount of money he has expended on the common areas, $4,000.00. (Id. at 17). Third, the Association argues that Miller's breach of fiduciary duty claim fails because: (i) the Association had no duty to fund common area maintenance until conveyed the common areas, (ii) Miller does not allege or offer proof that the Association spent the assessment money for a use not authorized by the Declaration, and (iii) Miller has failed to show that he suffered damages as a result of the Association's failure to pay him to maintain the common areas. (Id. at 17-18).

On October 25, 2010, Miller responded to each of the Association's arguments. First, Miller concedes that his claim for interference in Count I may be precluded by the First Amendment, but he asks the Court to defer judgment until further factual development at trial. ([Doc. 87] at 2, n. 1). Second, Miller argues that his breach of contract claim

should proceed to trial insofar as interpretation of the Declaration's ambiguity is a question of fact.  (Id. at 2-11).  Third, Miller argues that the Association breached a fiduciary duty created by the Declaration or by his status as a lot owner by failing to fund common area maintenance or at least set up a checking account to hold the assessment monies for that purpose.  (Id. at 11-14).

On November 5, 2010, the Association reemphasized and supplemented its previous arguments in support of its motion for summary judgment.  First, the Association argues that insofar as Miller offered no resistance to its First Amendment argument, Count I should be dismissed.  ([Doc. 89] at 1-2).  Second, the Association argues that summary judgment on Miller's breach of contract claim is proper because the Declaration is unambiguous that the Association had no duty to fund common area maintenance until conveyed the common areas.  (Id. at 2-4).  Third, the Association reemphasizes that Miller has failed to show that the Association spent the collected assessment funds for a use not authorized by the Declaration.  (Id. at 4-5).

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.* at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  ***Anderson***, 477 U.S. at 249 (citations omitted).

## II.    Analysis

### A.    Miller's Motion for Partial Summary Judgment on Second Amended Complaint

Miller moves for summary judgment on every count except Count III, citing three grounds: (1) the Act relied upon is inapplicable, (2) any claim for monetary relief is time-barred, and (3) any claim to enforce the Declaration is time-barred.  The Court will consider each ground, in turn.

#### 1.    Applicability of the Act

In its Second Amended Complaint, the Association alleges that Miller's failure or refusal to convey the common properties or maintain those properties violates not only the Declaration but also the Uniform Common Interest Ownership Act.  In his motion, Miller

presents two arguments for why the Association's claims can find no support in the Act, namely: (1) the Subdivision was not intended to be a common interest community and (2) the provisions relied upon do not apply retroactively.

The Act applies to "common interest communities," which it defines as "real estate with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance or improvement of other real estate described in a declaration . . .." W.Va. Code § 36B-1-103(7). "A common interest community may be created . . *only* by recording a declaration . . . *and* . . by conveying the real estate subject to that declaration to the association." W.Va. Code § 36B-2-101(a) (emphasis added).

Upon review of these provisions, the Court finds that the Act is inapplicable to the Subdivision. While the Subdivision may fall within the definition of a "common interest community," Miller's failure to convey to the Association the real estate subject to the Declaration appears to be determinative on the issue. In other words, as a matter of law, a common interest community could not have been created in the absence of this conveyance. That a common interest community has not been created precludes application of the Act. However, the Court finds that the inapplicability of the Act has no effect on the Association's right to pursue contractual remedies for violations of the Declaration.

### 2. Timeliness of Claims for Monetary Relief

In Count I, the Association requests an award of damages to repair the common elements within the Subdivision, if the Court does not direct Miller to make the repairs.

Next, in Count IV, the Association requests costs and attorney's fees for having to seek an injunction directing Miller to maintain the vegetation on Lot C-1. Finally, in Count V, the Association requests $525,000.00 in compensatory damages for repair and maintenance of the common elements of the Subdivision.

In his motion, Miller argues that each of these claims for monetary relief is barred by the ten-year statute of limitations for contracts in W.Va. Code § 55-2-6. The Association responds that its claims are equitable in nature because, *inter alia*, the damages sought are based in restitution. Miller replies that the claims are based in law, but even if equitable, the Court should apply the doctrine of laches.

Accordingly, the Court must apply a two-step analysis to determine the availability of the monetary relief sought. First, the Court will consider whether each remedy is legal or equitable. Second, the Court will consider whether the remedy is timely sought.

### i. Count I: Money to Make Repairs

At step one, the Court finds that the damages sought in Count I are legal in nature. Generally, money damages are a legal remedy. *See* ***Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry***, 494 U.S. 558, 570 (1990) (quoting ***Curtis v. Loether***, 415 U.S. 189, 196 (1974)). There are two exceptions, however. Damages are equitable when they are: (1) restitutionary or (2) "incidental to or intertwined with injunctive relief." ***Id***. at 570-71 (citing ***Tull v. United States***, 481 U.S. 412, 424 (1987)).

In Count I, the Association asks for an award of damages *in the alternative to* an injunction directing Miller to make the repairs. Thus, the remedy cannot be characterized as "incidental to or intertwined with" the injunction. As such, to be equitable, the damages

13

sought must be restitutionary, i.e., seek to prevent unjust enrichment. Here, however, there can be no argument that Miller has been enriched by the current disrepair of the common elements of the Subdivision. Enrichment would occur only after the Association would make the immediate repairs claimed necessary. Accordingly, the damages sought in Count I are not restitutionary, and thus, are legal in nature.

At step two, the Court finds that the damages sought in Count I are barred by the ten-year statute of limitations for contracts. *See* W.Va. Code 55-2-6. The Association filed suit on October 27, 2008. Miller's failure to maintain the common elements of the Subdivision began as early as 1987. As such, the Association's claim at law for the money to make repairs is time-barred as a matter of law. Accordingly, insofar as Count I seeks damages, said claim is hereby **DISMISSED**.

### ii.    Count IV: Costs and Attorney's Fees

At step one, the Court finds that the costs and attorney's fees sought in Count IV are equitable in nature. Recognizing that the award of costs is generally governed by federal law, *see* **Humann v. KEM Elec. Co-op, Inc.**, 497 F.3d 810, 813 (8th Cir. 2007), the Court looks first to Federal Rule 54(d) of Civil Procedure, which provides that costs, other than attorney's fees, shall be awarded to the prevailing party unless a court otherwise directs. With regard to costs, therefore, Rule 54(d) vests a district court with sound discretion. *See* **Constantino v. American S/T Achilles**, 580 F.2d 121, 123 (4th Cir. 1978); **Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.** 412 F.Supp.2d 571, 574 (E.D. Va. 2006). That a district has considerable discretion in awarding costs, several courts agree, embodies a practice long recognized in equity. *See, e.g.,* **Newton v. Consolidated Gas**

*Co. of New York*, 265 U.S. 78 (1924); ***Kelly v. Guinn***, 456 F.2d 100 (9th Cir. 1972); ***Globe Indem. Co. V. Puget Sound Co.***, 154 F.2d 249 (2d Cir. 1946); ***Crutcher v. Joyce***, 146 F.2d 518 (10th Cir. 1945). Thus, it would appear that the remedy of costs requested in Count IV is equitable in nature.

Attorney's fees, on the other hand, are generally not taxable as costs. *See* ***Wheeler v. Durham City Bd. of Educ.***, 585 F.2d 618, 623 (4th Cir. 1978). Actions seeking equitable relief, however, represent an exception to this rule. *See* ***Rolax v. Atlantic Coast Line R. Co.***, 186 F.2d 473 (4th Cir. 1951). Thus, insofar as the attorney's fees in Count IV are sought in conjunction with injunctive relief, the remedy is one based in equity.

At step two, the Court finds no reason to apply the equitable doctrine of laches to bar the Association's request for costs and attorney's fees as untimely. "Laches is inexcusable delay in asserting a right, and is an equitable defense, controlled by equitable considerations. To be a bar, the lapse of time must be so great, and the relation of the defendant to the right such that it would be inequitable to permit the plaintiff to assert it, where he has had, for a considerable period, knowledge of the existence, or might have acquainted himself with it, by the use of reasonable diligence." ***Cresap v. Cresap***, 54 W.Va. 581, 586, 46 S.E. 582, 590-91 (1904). Here, Miller has failed to show that the Association is guilty of laches with regard to it seeking maintenance of Lot C-1. Instead, Miller directs his arguments of delay only toward the Association's request for injunctions with regard to his failure to maintain or convey the common elements of the Subdivision. Accordingly, insofar as Count IV seeks costs and attorney's fees, said claim **SHALL PROCEED** as timely.

### iii.    Count V: Compensatory Damages

At step one, the Court finds that the compensatory damages sought in Count V are equitable in nature to the extent that those damages constitute restitution.  See **Chauffeurs**, 494 U.S. at 570 (citing **Tull**, 481 U.S. at 424).  In other words, insofar as the Association seeks reimbursement of repairs it has made since Miller became the developer of the Subdivision responsible for those repairs, the remedy is restitutionary because it seeks to prevent his unjust enrichment.  As such, the remedy is equitable.

At step two, the Court finds that laches bars any restitution the Association seeks for maintenance it provided before October 27, 1998, which is ten years before the filing of this suit.  In so finding, the Court exercises its discretion to apply the ten-year statute of limitations for contracts by analogy.

Since this Court sits in equity to decide the Association's claim of restitution, the laches doctrine applies.  "Still, an analogous statute of limitations is given significant weight when the timeliness of a claim is evaluated under laches.  In fact, courts do not apply a traditional laches analysis when utilizing a statute of limitations by analogy.  Instead, courts use the analogous statute of limitations as a presumptive time period for laches to bar a claim.  A delay beyond the statutory period is presumptively unreasonable."  **In re Hendry**, 2009 WL 4927636, *3 (D. Del. Dec. 21, 2009) (internal citations omitted).  Here, therefore, the ten-year statute of limitations for contracts applies by analogy in the laches analysis to presumptively establish unreasonable delay.  Accordingly, to the extent Count V seeks restitution for maintenance the Association provided before October 27, 1998, said claim is hereby **DISMISSED**.  To the extent Count V seeks restitution for maintenance the

Association provided on or after October 27, 1998, said claim **MAY PROCEED**.

### 3.    Timeliness of Claim to Enforce Declaration

In Count II, the Association requests, *inter alia*, an injunction directing Miller to convey the common elements within the Subdivision to the Association.  In his motion, Miller argues that Count II is barred by the ten-year statute of limitations for contracts because the Declaration required Miller to transfer the common elements to the Association by January 1, 1987.  The Association responds that because Miller's failure to convey the common elements is a breach of a covenant that runs with the land, an injunction to enforce that covenant is equitable and not subject to a statute of limitations.  Miller replies that the claim is based in contract and thus barred by the statute of limitations for contracts. Accordingly, the Court will again consider: (1) whether the nature of the remedy is equitable or legal and (2) whether the remedy is timely sought.

At step one, the Court finds that the injunction sought in Count II is equitable in nature.  In fact, there may be no remedy more equitable than an injunction  *See **Monsanto Co. v. Geertson Seed Farms***, 130 S.Ct. 2743 (June 21, 2010); ***Real Truth About Obama, Inc. v. Fed. Election Comm'n***, 575 F.3d 342 (4th Cir. 2009); ***Ayers v. Ziegler***, 2010 WL 4739926 (N.D. W.Va. Nov. 16, 2010).  This is especially true of an injunction directing specific performance.  *See **Mardirossian v. Paul Revere Life Ins. Co.***, 286 F.3d 733, 736 (4th Cir. 2002) (describing specific performance as a "traditional equitable remedy").

At step two, the Court finds that the injunction sought in Count II is timely.  Unlike a defense based upon the statute of limitations, mere delay is not sufficient to bar relief under the doctrine of laches.  *See **Clark v. Volpe***, 342 F.Supp. 1324, 1328 (E.D. La. 1972)

("There is no certain period of time within which a plaintiff may reasonably delay before filing suit; that 'reasonable' period varies upon the circumstances of each case."). Thus, laches differs from the limitations defense in that the latter is concerned with the fact of delay, whereas the former focuses on the effect of delay. *See Hoehn v. Crews*, 144 F.2d 665 (10th Cir. 1944). Generally, delay coupled with knowledge and acquiescence in the acts complained of, as well as prejudice to the defendant, will be a sufficient basis for denying injunctive relief. *See Id.* at 670. ("Laches has been defined . . . an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay.").

In the instant case, there has been a considerable delay between the right to bring an action and the commencement of this action. Specifically, the Declaration required Miller to convey the common elements to the Association "not later than January 1, 1987." (Decl. Art. VII, Sect. 3). The Association filed suit on October 27, 2008, asking this Court to direct that conveyance. Moreover, there is evidence that the Association had knowledge of Miller's failure to convey the common elements as early as May 20, 1987. (See [Doc. 84-3] at 1). However, Miller has failed to persuade this Court either that the Association acquiesced in his breach or that he would be prejudiced by allowing delayed enforcement. With regard to acquiescence, the Association has continually taken the position that the common  elements of the Subdivision should be deeded as required by the Declaration. (See [Doc. 84-1] at 1; [Doc. 84-2] at 1; [Doc. 84-3] at 1; [Doc. 84-4] at 1). As for prejudice, the Court finds it more inequitable for Miller to continue in his ownership of the common

18

elements than for him to be divested of that ownership for the benefit of the Association. In fact, conveyance would seem to be in Miller's best interests, as the Declaration makes clear that he would then have no more obligation to maintain the common elements of the Subdivision. (Decl. Art. IV, Sect. 3). Accordingly, insofar as Count II seeks an injunction directing Miller to convey the common elements within the Subdivision to the Association, said claim **SHALL PROCEED** as timely.

### B. Association's Motion for Partial Summary Judgment on Counterclaim

The Association moves for summary judgment on Counts I, II, and V of Miller's Counterclaim, citing three grounds: (1) the Association is immune from suit for its objection to Miller's proposed use of Lot C-1, (2) the Association has no duty under the Declaration to pay for maintenance of the common elements until conveyed, and (3) the Association has not spent its assessments in an unauthorized manner. The Court will consider each ground, in turn.

### 1. Count I: Interference with Advantageous Business Relationship

In Count I, Miller claims that the Association interfered with his advantageous business relationship in connection with creating a residential apartment complex on Lot C-1 by appearing before the Jefferson County Planning Commission to oppose his CIS and by submitting a petition to the Commission in opposition to the apartment complex. In its motion, the Association argues that its opposition to Miller's CIS is protected by the First Amendment doctrine articulated in ***Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.***, 365 U.S. 127 (1961) and ***United Mine Workers of America v. Pennington***, 381 U.S. 657 (1965) ("***Noerr-Pennington***"). In response, Miller concedes that his claim

19

for interference may be precluded by *Noerr-Pennington*, but he asks the Court to defer judgment until further factual development at trial.

"The *Noerr-Pennington* doctrine grants First Amendment immunity to those who engage in petitioning activity." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003) (citations omitted). "[T]he doctrine has now universally been applied to business torts." *Id.* (citing *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999)). *Noerr-Pennington* immunity is subject to a "sham" exception, whereby immunity is defeated if the activity is "objectively baseless in the sense that no reasonable [petitioner] could realistically expect success on the merits." *Id.* at 312 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)). "The application of *Noerr-Pennington* is a question of law." *Roche*, 335 F.3d at 310 (citing *TEC Cogeneration Inc. v. Fla. Power & Light Co*, 76 F.3d 1560, 1567 (11th Cir. 1996).

Upon careful consideration of the above, the Court finds that the Association's activity in opposition to Miller's CIS is immune from suit under *Noerr-Pennington*. First, there can be no question that petitioning a planning commission and appearing for a public hearing conducted by a planning commission are petitioning activities. Second, insofar as Miller argues that the Association was successful in its opposition, Miller forecloses application of the "sham" exception. Thus, as a matter of law, *Noerr-Pennington* immunizes the Association from the cause of action alleged in Count I. Accordingly, Count I is hereby **DISMISSED**.

### 2. Count II: Breach of Contract

In Count II, Miller claims that the Association breached the Declaration, as well as

its own articles of incorporation and by-laws, by failing or refusing to fund his maintenance of the common elements of the Subdivision. In its motion, the Association argues that its obligation to fund any maintenance of the common areas commences only upon conveyance, which has not occurred. Miller responds that the Declaration is ambiguous and that the need to consider extrinsic evidence precludes summary judgment. Alternatively, Miller argues that Article IX of the Declaration requires the Association to fund any maintenance of the common areas. The Association replies that Article IV unambiguously requires Miller to maintain the common areas and that Article IX applies only after conveyance.

Article IV, Section 3 of the Declaration provides, in pertinent part, that:

Section 3. The Developer shall be responsible for the original construction of the streets and common areas in the subdivision. Upon completion of the streets and common areas, the same shall be dedicated and conveyed to the Association. *It shall be the further <u>responsibility of the Developer</u> to maintain the streets, and all other common properties . . . <u>until</u> such time as these amenities are <u>dedicated and deeded to the Association</u>*.

*<u>Upon dedication of the common properties . . . to the Association</u>, the initiation fees and assessments levied by the Association shall be used* exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents and other persons owning and using lots in Patrick Henry Estates Subdivision and in particular *for the improvement and maintenance of properties*, services and facilities devoted to this purpose.

. . .

(Decl. Art. IV, Sect. 3) (emphasis added).

Unambiguously, the above-quoted language provides that Miller maintain the common elements of the Subdivision until he deeds that property to the Association. Then, and only then, this language requires the Association to use its assessments to maintain

the common areas. There is no indication, or even an implication, that this language requires the Association to use its assessments to pay for Miller's pre-conveyance maintenance.

Article IX does not require a contrary conclusion, *i.e.*, that the Association was required to pay for maintenance before conveyance. Among other things, Article IX provides that:

> Section 3. The [Association] shall be responsible for *managing* road maintenance activities . . ..
>
> Section 4. The [Association] shall, within sixty (60) days following the recording of the Patrick Henry Estates, Section, A, final plat in the Jefferson County Court House, *open a road maintenance checking account with a bank in Jefferson County* . . ..
>
> Section 5. Funds to be deposited in the Road Maintenance Fund checking account *shall be collected* by the [Association] as part of the yearly assessment for reach lot in Patrick Henry Estates. Such funds shall be equal to at least 80 percent of the required yearly assessment for each lot. The [Association] shall *collect* the required yearly assessment for each lot in Patrick Henry Estates *according to the provisions of ARTICLE IV*.

(Decl. Art. IX, Sect. 3-5) (emphasis added).

First, these sections require only that the Association manage maintenance activities, open a check account for road maintenance, and deposit collected assessments into that checking account. However, these sections do not require the Association to use the checking account to fund Miller's pre-conveyance maintenance.

Second, Section 5 references that assessment collection be conducted in accordance with Article IV. As explained above, Article IV unequivocally requires Miller to maintain the common areas until conveyance, which Miller concedes has not occurred.

For these reasons, the Court finds that the Declaration places the entire

22

responsibility of pre-conveyance maintenance of the common areas solely upon Miller. This responsibility has not been shifted to the Association because Miller has not conveyed the common areas as required by the Declaration. As a matter of law, therefore, the Association could not have breached the Declaration by not funding Miller's maintenance. Accordingly, insofar as Count II relies upon the Association's failure to fund Miller's pre-conveyance maintenance, said claim is hereby **DISMISSED**.

### 3.      Count V: Breach of Fiduciary Duty

In Count V, Miller claims that the Association's failure or refusal to fund his maintenance of the common areas also breached its fiduciary duty to spend collected assessments for road maintenance. In its motion, the Association argues that simply because it is tasked with collecting assessments does not create a fiduciary duty to fund Miller's pre-conveyance maintenance. In addition, the Association argues that Miller has failed to present any evidence of improper use of assessments. Miller responds that the Declaration, taken as a whole, manifests an intent that the Association fund all common area maintenance.[2]

First, as outlined above, the Declaration does not require the Association to fund Miller's pre-conveyance maintenance. For this reason, the Court also finds that the Association has no fiduciary duty to fund maintenance of the common areas until

---

[2] Miller also argues that the Association further breached its fiduciary duty by breaching certain provisions of Article IX of the Declaration, such as the provision requiring the Association to maintain a checking account dedicated exclusively to road maintenance. Upon a careful review of the Counterclaim, however, the Court finds that Miller has only alleged that the Association breached its fiduciary duty by failing to fund his common area maintenance. (See [Doc. 23] at ¶¶ 79-85). Miller does not allege, in Count V, that the Association breached its fiduciary duty by failing to follow the requirements of Article IX. As such, the allegations in Miller's responsive brief are not properly before the Court.

conveyance.

Second, the Court agrees that Miller has failed to present any evidence that the Association has used its assessments in a manner inconsistent with the Declaration. Article IV, Section 3 provides, in pertinent part, that:

> [T]he initiation fees and assessments levied by the Association *shall be used exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents and other persons owning and using lots in Patrick Henry Estates Subdivision* and in particular for the improvement and maintenance of properties, services and facilities devoted to this purpose.
>
> Pursuant to the foregoing, the Association may use and employ initiation fees and assessments to provide for repair, improvement and maintenance of the common properties, payment of taxes and insurance thereon, repaving, improvement, repair and maintenance of streets, alleys, and common ways and for construction, reconstruction, repair, and maintenance and improvement of storm sewers. *Any enumeration of specific uses herein, however, shall not be construed to limit the Association to the use of initiation fees and assessments for purposes similar to the foregoing.*

(Decl. Art. IV, Sect. 3) (emphasis added).

According to this language, the Association is required to use assessments "exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents and [lot owners]" in the Subdivision. Moreover, the Association is authorized to use those assessments for a number of listed common area maintenance activities, as well as for any purpose "similar" to those listed activities. Miller has presented no evidence that the Association has ventured beyond these fairly broad parameters. That the Association has refused to fund his pre-conveyance maintenance is inapposite. Accordingly, insofar as Count V relies upon the Association's failure to fund Miller's pre-conveyance maintenance, said claim is hereby **DISMISSED**.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Patrick Henry Estates Homeowners Association, Inc.'s Partial Motion for Summary Judgment as to Defendant's Counterclaims **[Doc. 83]** should be, and hereby is, **GRANTED**.  In addition, the Court finds that Defendant Dr. Gerald Miller's Motion for Partial Summary Judgment **[Doc. 84]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: December 15, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE